Marcie E. Schaap #4660
Joseph D. Amadon #16386
Marcie E. Schaap, Attorney at Law, P.C.
4760 S. Highland Drive   #333
Salt Lake City, Utah 84117
Telephone:     (801) 201-1642
Facsimile:      (801) 666-7749
E-mail:
marcie@marcieeschaap.com
joe@marcieeschaap.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| IHC HEALTH SERVICE, INC. dba DIXIE REGIONAL MEDICAL CENTER, | ) ) ) | **COMPLAINT** |
| Plaintiff, | ) ) ) | Case No. 2:18-cv-00647-CW |
| v. | ) ) | Judge Clark Waddoups |
| TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER, and HEALTH BENEFIT PLAN FOR THE EMPLOYEES OF TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Plaintiff, through its undersigned counsel, complains and alleges as follows:

//

//

//

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff, IHC HEALTH SERVICES, INC. ("IHC"), operates several hospitals in the Intermountain Area, including DIXIE REGIONAL MEDICAL CENTER ("Dixie" or the "Hospital"), in St. George, Utah.

2. IHC and the Hospital may be referred to collectively herein as "Plaintiff."

3. TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER ( "Texas Tech" herein) is a foreign entity.

4. Texas Tech funds a health insurance plan, HEALTH BENEFIT PLAN FOR THE EMPLOYEES OF TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER (the "Plan" herein), of which H.H. is a beneficiary and B.H. is a participant.

5. Texas Tech is the Plan Administrator of the Plan.

6. Defendants contracted with Insurance Management Services ("IMS" herein) to act as claims administrator and plan supervisor for the Plan.

7. IMS acts on behalf of Defendants in determining whether or not claims are to be paid.

8. IMS pays claims in accordance with the Plan rules established by Defendants.

9. IMS acts as an agent of Sky Chefs in administering the Plan.

10. The Plaintiff provided medical treatment to H.H. at the Hospital in Salt Lake City, Utah, on August 20, 2015 through August 21, 2015 (the "Dates of Service").

11. H.H. was, at all times relevant hereto, a resident of the State of Utah.

12. H.H. was a beneficiary of the Plan.

13. B.H. is H.H.'s father.

14. B.H., on behalf of his minor daughter H.H., signed an Assignment of Benefits ("AOB") in favor of the Plaintiff for the claim which is in dispute herein.

15. The AOB authorizes Plaintiff to appeal, negotiate, or otherwise pursue payment of any benefits from the Plan for the Dates of Service.

16. The AOB designated the Plaintiff as an authorized member representative to appeal all denied claims.

17. Pursuant to the AOB, Plaintiff "stands in the shoes" of H.H. as a beneficiary of the Plan.

18. This is an action brought under ERISA. This Court has jurisdiction in this matter under 29 U.S.C. § 1132(e)(1). Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c) because the communications during the administrative appeal process took place between the Plaintiff and the Defendants in the State of Utah, and the breaches of ERISA and the Plan occurred in the State of Utah. Additionally, ERISA provides in 28 U.S.C. § 1391(c)(3) that "a defendant not resident in the United States may be sued in any judicial district." Moreover, based on ERISA's nationwide service of process provision and 28 U.S.C. § 1391, jurisdiction and venue are appropriate in the District of Utah.

19. The remedies Plaintiff seeks under the terms of ERISA are for the benefits due under 29 U.S.C. § 1132(a)(1)(B), for penalties pursuant to 29 U.S.C. § 1132(a)(1)(c), for interest and attorneys' fees under 29 U.S.C. § 1132(g), and for other appropriate equitable relief under 29 U.S.C. § 1132(a)(3).

//

//

## FACTUAL BACKGROUND

### A. Medical Treatment

20. Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

21. H.H. was admitted to the Hospital on August 20, 2015, and discharged on August 21, 2015.

22. At the time of treatment, H.H. was a 16-month-old girl.

23. On August 20, 2015, H.H. presented to the Hospital's Emergency Department ("ED") after swallowing several refrigerator magnets.

24. An x-ray revealed several magnets in her left upper abdominal quadrant.

25. H.H. was deemed medically unstable for discharge to home.

26. H.H. was taken to the operating room and received general anesthesia with endotracheal intubation. She underwent an esophagogastroduodenoscopy for multiple ingested gastric foreign bodies.

27. Approximately 29 magnets were retrieved.

28. Abdominal x-ray was performed to verify all of the magnets were successfully retrieved.

29. Multiple passes through the esophagus were required to retrieve all of the magnets. The physician ordered overnight hospitalization given the significant intervention required to retrieve the magnets, which placed H.H. at risk for edema of the airway or feeding difficulties due to mucosal erosion noted on endoscopy.

30. Following the procedure, H.H. was taken to the post anesthesia care unit (PACU) for postoperative monitoring and intervention. Once recovered, she was taken to her hospital room.

31. While hospitalized, H.H. was carefully monitored with continuous cardiac monitoring and pulse oximetry with postoperative and routine vital signs. She received IV fluid at 50 milliliters per hour. She was given Prevacid sublingual and oral Ibuprofen. She was started on a full liquid diet and tolerated it well. Diet and activity were advanced as tolerated.

32. On August 21, 2015, H.H. was deemed medically stable for discharge to home. Her parents received discharge teaching and instruction for outpatient follow-up with appropriate providers.

33. H.H.'s presentation to the Emergency Department and subsequent hospitalization was medically necessary to assess, evaluate, and surgically stabilize her concerning ingestion of 29 refrigerator magnets. The absence of immediate medical attention could have placed her health in jeopardy. The physician ordered overnight hospitalization given the significant intervention required to retrieve the magnets, which placed H.H. at risk for edema of the airway or feeding difficulties due to mucosal erosion noted on endoscopy. In the opinion of the treating physician, this hospitalization was appropriate, felt medically necessary, and consistent with the best standards of pediatric medical practice.

34. The treatment H.H. received was to treat an emergent health condition which prevented her from seeking treatment at an in-network provider.

35. The Plaintiff's billed charges for the treatment it rendered to H.H. at the Hospital were $13,271.61 ("Billed Charges").

### B. Claims and Claim Processing

36. The Hospital submitted a claim to the Defendants and/or its agents in a timely manner for H.H.'s Billed Charges.

37. The Defendants paid $2,923.43 to the Hospital for this claim.

38. The Defendants and/or its agents denied a significant portion of Plaintiff's claim because Defendants asserted treatment was provided out of network and the Billed Charges exceeded usual, customary, and reasonable costs.

39. Plaintiff has made timely appeals to Defendants and/or its agent, however Defendants denied these appeals.

40. Plaintiff has exhausted its administrative remedies under the Plan.

41. The Defendants have provided no supporting evidence to deny Plaintiff's claim.

42. Several attempts to resolve the matter have ensued, but the Defendants continue to deny the balance of this claim.

43. The parties have also communicated many times by phone, as set forth in the electronic and written records kept by the Plaintiff of the communications it has had with the Defendants during the appeal process.

44. Plaintiff's litigation counsel, Ms. Marcie E. Schaap, sent a final appeal letter to the Defendants agent on May 28, 2018.

45. A copy of the Plaintiff's communication records was sent to the Defendants and/or their agents prior to this litigation being filed.

46. The Defendants have not paid the outstanding balance due to the Plaintiff for the treatment the Hospital rendered to H.H.

47. A balance of $10,348.18, plus interest, remains due to the Plaintiff from the Defendants for the treatment the Hospital rendered to H.H.

## FIRST CAUSE OF ACTION
(Recovery of Plan Benefits Under 29 U.S.C. §1132(a)(1)(B))

48. Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as though fully stated herein.

49. The Plaintiff has submitted all proof necessary to the Defendants to support its claims for payment.

50. The Defendants have failed to provide evidence to the Plaintiff to support its basis for denial.

51. The Defendants have not fully reviewed or investigated all information sent to it by the Plaintiff and/or the Hospital, or available to it, which has caused the Defendants to deny a large portion of this claim.

52. The Defendants have failed to bear their burden of proof that an exclusion or requirement in the Plan Document supports its denial of a large portion of the claim for H.H.'s treatment.

53. The Defendants failed to offer the Plaintiff a "full and fair review" as required by ERISA.

54. The Defendants failed to offer the Plaintiff "higher than marketplace quality standards," as required by ERISA. MetLife v. Glenn, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008).

55. The actions of the Defendants and/or their agents, as outlined above, are a violation of ERISA, a breach of fiduciary duty, and a breach of the terms and provisions of the Plan.

56. The actions of the Defendants and/or their agents have caused damage to the Plaintiff in the form of a denial of ERISA medical benefits.

57. The Defendants are responsible to pay the balance of the claim for H.H.'s medical expenses, and to pay Plaintiff's attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g), plus pre- and post-judgment interest to the date of payment of the unpaid benefits.

## SECOND CAUSE OF ACTION
(Breach of Fiduciary Duties Under 29 U.S.C. §§1104, 1109, and 1132(a)(2) and (3))

58. Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

59. Defendants have breached their fiduciary duties under ERISA in the following ways:

   A. Defendants have failed to discharge its duties with respect to the Plan:

      1. Solely in the interest of the participants and beneficiaries of the Plan and

      2. For the exclusive purpose of:

         a. Providing benefits to participants and their beneficiaries; and

         b. Defraying reasonable expenses of administering the Plan.

      3. With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

      4. By failing to fully investigate the Plaintiff's claims.

      5. By failing to fully respond to the Plaintiff's appeals and requests for information in a timely manner.

8

6. And in other ways to be determined as additional facts are discovered.

60. The actions of the Defendants in breaching their fiduciary duties under ERISA have caused damage to the Plaintiff in the form of denied medical benefits.

61. In addition, as a consequence of the breach of fiduciary duties of the Defendants, the Plaintiff has been required to obtain legal counsel and file this action.

62. Pursuant to ERISA and to the U.S. Supreme Court's ruling in IMS Corp. v. Amara, 131 S. Ct. 1866, 179 L.Ed. 2d 843 (2011), the Plaintiff's "make-whole relief" constitutes "appropriate equitable relief" under Section 1132(a)(3).

63. Therefore, the Plaintiff is entitled to payment of the medical expenses it incurred in treating H.H., as well as an award of interest, attorney's fees and costs incurred in bringing this action pursuant to the provisions of 29 U.S.C. §1132(g).

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For judgment on Plaintiff's First Cause of Action in favor of the Plaintiff and against the Defendants pursuant to 29 U.S.C. §1132(a)(1)(B), for unpaid medical benefits in the amount of $10,348.18 for attorneys' fees and costs incurred pursuant to 29 U.S.C. §1132(g), and for an award of pre- and post-judgment interest to the date of the payment of the interest claimed.

2. For judgment on Plaintiff's Second Cause of Action in favor of the Plaintiff and against the Defendants pursuant to 29 U.S.C. 29 U.S.C. §§1104, 1109, and 1132(a)(2) and (3)), for breach of fiduciary duty and equitable damages in the form of unpaid medical benefits in the amount of $10,348.18 for attorneys' fees and costs incurred pursuant to 29 U.S.C.

§1132(g), and for an award of pre- and post-judgment interest to the date of the payment of the interest claimed.

For such other equitable relief under 29 U.S.C. §1132(a)(3) as the Court deems appropriate.

DATED this 20th day of August, 2018.

                              MARCIE E. SCHAAP, ATTORNEY AT LAW

                              By:   /s/ Marcie E. Schaap
                                          Attorney for Plaintiff